IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-mc-00043-REB-MJW

UNITED LAUNCH ALLIANCE LLC,

Movant,

v.

ENERGIA LOGISTICS LTD.,

Respondent.

**ORDER ON NON-PARTY UNITED LAUNCH ALLIANCE, LLC'S MOTION TO QUASH SUBPOENA OR FOR PROTECTIVE ORDER (Docket No. 1)**

**Entered by Magistrate Judge Michael J. Watanabe**

United Launch Alliance ("ULA") received subpoenas as part of a lawsuit pending in the Central District of California under docket number CV 13-00730-AB (AJWx). It has moved in this District to quash one of those subpoenas.

The Court has reviewed the parties' filings (Docket Nos. 1, 10–13, & 16), as well as the applicable Federal Rules of Civil Procedure, statutes, and case law. Now being fully informed, the Court GRANTS IN PART and DENIES IN PART Non-Party United Launch Alliance LLC's Motion to Quash Subpoena or for Protective Order (Docket No. 1), for the following reasons.

## BACKGROUND

In 1995, the Boeing Company and various international entities, including the Russian company Energia Logistics Ltd., formed a joint venture named Sea Launch. It was to be based in California and provide satellite-launch services to commercial customers. The venture failed, and (according to Boeing) Energia and related entities

are obligated to reimburse Boeing for some $350 million in sunk costs. (See Docket No. 1-3, ¶¶ 3-4.)

In 2006, Boeing and Lockheed Martin formed ULA as a 50-50 joint venture. ULA provides satellite-launch services to the Federal Government and to commercial customers—using parts of the Atlas rocket family formerly owned by Lockheed Martin and parts of the Delta rocket family formerly owned by Boeing. (Docket No. 10-2, p.1.)

In 2013, Boeing sued Energia and others for breach of the Sea Launch contract, suing in the U.S. District Court for the Central District of California. (Docket No. 1-3.) In response, Energia has raised an "unclean hands" defense—arguing that Boeing improperly diverted opportunities from Sea Launch to ULA, thereby undermining Sea Launch while still profiting as co-owner of ULA. (Docket No. 10, pp. 2-3.) Boeing moved to strike the affirmative defense, unsuccessfully. The question of whether Sea Launch and ULA were actually competitors in the same market remains a disputed factual issue in the lawsuit. (*See* Docket No. 16-1, pp. 6-8; Docket No. 13, pp. 6-12.)

Throughout discovery, Energia has pursued contracts and financial information relating to ULA's launches, both from Boeing and from ULA. The magistrate judge overseeing the case, Judge Andrew J. Wistrich, has consistently expressed skepticism about Energia's unclean-hands theory—but has nonetheless allowed discovery into ULA's contracts and finances to the extent Boeing has such information. A recurring issue of confusion has been how to account for certain contracts that were not launch-specific—*i.e.*, "launch capability" or "launch readiness" contracts that spanned

over multiple launches. (*See* Docket No. 13, p.7.) Judge Wistrich has ordered that Boeing produce a deponent who can testify as to the overall structure of how these contracts fit together—the individual-launch contracts and the broader launch-capability contracts—but has declined to compel Boeing to produce a deponent who can testify as to the costs, profits, etc., that might be allocable from the launch-capability contracts to each individual launches. (Docket No. 16-1, pp. 11-12; Docket No. 13, at 9-12, 17-18.) The basis for limiting the latter limitation is not entirely clear in the record provided by the parties; it seems as though Judge Wistrich's rulings are partly based on Boeing not having the information (because ULA has it), and partly because the financial nitty-gritty less relevant than the overall structure of the contracts.

Now, Energia has served both a deposition subpoena and a documents subpoena on ULA. (Docket No. 1-1.) Following negotiations between counsel, ULA produced documents for the subpoena *duces tecum*. (Docket Nos. 1-6 & 1-2.) Energia has not objected to ULA's document production. However, Energia and ULA have been unable to agree on the need for (or scope of) the deposition. ULA is headquartered within the District of Colorado and has moved in this District to quash or modify the deposition subpoena.

The deposition notice contained the following topics:

1. SEA LAUNCH and/or the Zenit launch vehicle.
2. RSC ENERGIA.
3. Purchases of goods and/or services provided by ULA prior to January 1, 2010 involving DELTA LAUNCH VEHICLES.

4. For each LAUNCH by ULA involving DELTA LAUNCH VEHICLES prior to January 1, 2010, REVENUE and COSTS relating to that LAUNCH.

5. All analyses and/or general descriptions of the market for LAUNCHES, or a subset thereof.

(Docket No. 1-1, p.13 (defined terms in caps).) The parties have narrowed their dispute to the third and fourth topics, apparently because Energia has withdrawn its subpoena as to the other three topics. (*See* Docket No. 10, p.4.)

Notably, the parties appear to have agreed to the following production of documents, as to topics 3 and 4 (the topics in the document subpoena and the deposition subpoena are materially identical):

> Subpoena Topic No. 3: ULA will produce the agreed-upon portions of ULA's launch contracts for Delta Launches for the period of 2006-2009 in ULA's possession and not previously produced or duplicative of documents that will be produced by Boeing. ULA will not produce all of the attachments and technical data for each contract because, as agreed, this would be overly burdensome, but instead ULA will produce documents sufficient to show price, payload and scope of work. ULA will not produce its launch capabilities contracts with the United States Government because these contracts are not relevant or responsive as they do not relate to Delta Launch Vehicles.
>
> Subpoena Topic No. 4: ULA will produce a spreadsheet reflecting ULA's revenues and costs for each Delta Launch between 2006-2009. This document reflects ULA's actual revenues and costs for each Delta Launch. ULA will also provide a declaration substantiating that the spreadsheet is a ULA business record that can be used by Energia for evidentiary purposes in lieu of deposition testimony.

(Docket No. 1-6, p.2.) Finally, Energia has accepted business-records declarations tendered with the production and appears not to contend that it needs the deposition for authentication purposes. (Docket No. 10, p.4 n.2.)

**FINDINGS OF FACT & CONCLUSIONS OF LAW**

Rule 45 of the Federal Rules of Civil Procedure provides:

> **(3) *Quashing or Modifying a Subpoena*.**
>
> (A) *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> > (i) fails to allow a reasonable time to comply;
> >
> > (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> >
> > (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> >
> > (iv) subjects a person to undue burden.
>
> (B) *When Permitted*. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
>
> > (i) disclosing a trade secret or other confidential research, development, or commercial information; or
> >
> > (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
>
> (C) *Specifying Conditions as an Alternative*. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
>
> > (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
> >
> > (ii) ensures that the subpoenaed person will be reasonably compensated.

Fed.R.Civ.P. 45(d)(3).

Before discussing whether to modify or quash the subpoena under Rule 45(d)(3)(A), the Court must make three preliminary points. First, ULA's relevancy argument is rejected out of hand. Judge Wistrich has ruled on the question repeatedly and is allowing discovery into the topic; this Court will not second-guess that determination. Second, ULA's argument that it would cost $300,000 and take 700 employee-hours of work (including 500 hours for the deponent alone) to comply with the deposition subpoena is likewise rejected. ULA provided a declaration making this estimate, but the numbers are purely *ipse dixit*, with no explanation as to how ULA arrived at these estimates. Finally, Energia relies heavily on case law from this District applying the "substantial need" test under Rule 45(d)(3)(C)(i). (*See, e.g.*, Docket No. 16 (applying factors from *DISH Network LLC v. WNET*, Case No. 13-cv-00832-PAB-KLM, 2014 WL 1628132, at *3 (D. Colo. Apr. 24, 2014).) But Rule 45(d)(3)(C) on its own terms applies only "[i]n the circumstances described in Rule 45(d)(3)(B)." Energia has not argued that any of the conditions in Rule 45(d)(3)(B) have been met, and so the case law Energia relies on is irrelevant.

As to the merits of the motion, Energia never quite explains why it needs to take deposition testimony to augment the information gained from ULA's production of documents. The closest Energia comes is this:

> Nor does [ULA] explain why ULA's witness would supposedly need to review all of the 14,000 pages of documents that ULA has produced to date simply to testify about what other documents might exist, the general nature of ULA's contracting practices, or ULA's general accounting practices with respect to government launches.

(Docket No. 10, p.9.) It's not clear why Energia neglected to explain anywhere else in its

filing what it hopes to gain from its deposition that it hasn't already gained from the documents themselves. But that said, these specific topics are reasonable and not unduly burdensome. The Court will not quash the subpoena.

However, ULA argues (and offers an affidavit in support of the fact) that it does not keep financial or accounting records allocating the costs, profits, and margins from its launch-capabilities contracts to specific launches. Energia offers no reason to believe that such records do exist or that ULA is otherwise dissembling. ULA cannot be compelled to create records or information that does not exist, and to depose ULA on such hypothetical information would be an undue burden. The Court will therefore modify the subpoena under Rule 45(d)(3)(A) and Rule 26(c), precluding Energia from deposing ULA about the contents of financial records that do not exist.

**ORDER**

Accordingly, the Court hereby ORDERS that ULA's Motion to Quash Subpoena or for Protective Order is GRANTED IN PART and DENIED IN PART. More specifically:

- The motion is DENIED insofar as it seeks to quash the deposition subpoena.
- The motion is GRANTED insofar as it seeks a modification of the deposition subpoena/protective order limiting the deposition.
- It is FURTHER ORDERED that the deposition take place but be limited to the topics identified by Energia in its filings with this Court: "what other documents might exist, the general nature of ULA's contracting practices, [and] ULA's general accounting practices with respect to government launches."
- It is FURTHER ORDERED that Energia may not inquire into how the costs, margins, and profits from launch-capability contracts might be allocated to

specific launch contracts, as the Court finds that such an inquiry is unduly burdensome.

Dated: March 31, 2015
Denver, Colorado

*/s/ Michael J. Watanabe*
Michael J. Watanabe
United States Magistrate Judge